UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KELLY KENNEDY | CIVIL ACTION |
| VERSUS | NO. 23-6395 |
| GEOVERA SPECIALTY INSURANCE COMPANY | SECTION M (4) |

### ORDER & REASONS

Before the Court is a motion to strike an appraisal award filed by defendant GeoVera Specialty Insurance Company ("GeoVera").[1] Plaintiff Kelly Kennedy responds in opposition,[2] and GeoVera replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion.

### I. BACKGROUND

This case relates to a dispute over a homeowners insurance claim. GeoVera issued a wind-only homeowners insurance policy to Kennedy covering the property located at 1932 Concord Road, Terrytown, Louisiana 70056 ("the Property") from March 31, 2021, through March 31, 2022 ("the Policy").[4] On August 29, 2021, Hurricane Ida made landfall in Louisiana.[5] Kennedy reported hurricane-related property damage to GeoVera on October 19, 2021.[6] The Property was inspected two days later and, based on the inspection report, estimate, and photographs, GeoVera issued payment of the undisputed amount of $7,259.23.[7] In December 2021, Kennedy, through her attorney, sent GeoVera a demand and estimate by Kennedy's public adjuster, Galmon

---

[1] R. Doc. 13.
[2] R. Doc. 16.
[3] R. Doc. 17.
[4] R. Docs. 13-1 at 1-2; 13-2.
[5] R. Doc. 16 at 1.
[6] R. Doc. 13-1 at 2.
[7] *Id.*

International, alleging damages totaling $55,692.21.[8] The Property was reinspected on January 15, 2022, and GeoVera made payment of the undisputed amount of $2,465.71 based on the reinspection.[9]

In March 2022, Kennedy invoked the Policy's appraisal provision, naming Barry Van Shoubrouek of Irwin & Associates ("Irwin") as the insured's appraiser.[10] GeoVera named Christopher Craig as its appraiser.[11] Both appraisers conducted a joint inspection of the Property in May 2022.[12] The appraisers failed to agree on a damage estimate, and Miles Corbitt was appointed by them as umpire in August 2022.[13] On March 24, 2023, Corbitt issued an appraisal award of $146,436.65,[14] which was signed by Van Shoubrouek on March 26, 2023.[15] GeoVera subsequently requested examinations under oath of Kennedy, Corbitt, and Van Shoubrouek, which GeoVera asserts went unanswered.[16]

Kennedy filed suit in state court in September 2023, and the action was removed to this Court in October 2023.[17] The case has proceeded through the Streamlined Settlement Program under the Court's Hurricane Ida Claims Case Management Order.[18] Upon receiving Kennedy's initial disclosures in September 2024, including the appraisal contract between Kennedy and Irwin ("the Appraisal Contract"), GeoVera filed the instant motion to strike the $146,436.65 appraisal award.[19] While the parties did not opt out of the Streamlined Settlement Program, because the

---

[8] R. Docs. 13-1 at 2; 13-3.
[9] R. Doc. 13-1 at 2.
[10] R. Docs. 13-1 at 2; 16 at 1. Irwin's valuation of loss totaled $164,658.06. *See* R. Doc. 13-8 at 62-63, 74.
[11] R. Docs. 13-1 at 2; 13-4.
[12] R. Doc. 13-1 at 3.
[13] R. Docs. 13-1 at 3; 16 at 1.
[14] R. Docs. 13-1 at 3; 13-5.
[15] R. Docs. 13-1 at 3; 13-5.
[16] R. Doc. 13-1 at 3.
[17] R. Docs. 1; 1-2.
[18] R. Doc. 5.
[19] R. Doc. 13-1 at 3.

Court agrees that the validity of the appraisal award "is a vital preliminary matter and its resolution will aid in the overall progress of the case in chief,"[20] the Court will decide the motion.

## II. PENDING MOTION

In its motion to strike, GeoVera contends that the Appraisal Contract effectively creates a contingency fee arrangement by setting Irwin's fee based on the appraisal valuation.[21] GeoVera argues that the award is invalid under the terms of the Policy's appraisal provision, which provides that "each party will choose a competent and impartial appraiser," "[a]n appraiser will not be considered impartial if their compensation is determined by the amount of the appraisal award,"[22] and GeoVera "retain[s] the right to apply the policy coverages, terms, and conditions under this policy to any appraisal award."[23] GeoVera also argues that the Appraisal Contract is invalid under Louisiana law because it is inherently partial due to Irwin's "clear financial interest in the outcome of the appraisal."[24] GeoVera further contends that, while Irwin's valuation of loss is invalid based on the fee arrangement alone, it and Corbitt's appraisal award are "inaccurate and unreliable" as they both "included numerous repairs wholly unrelated to Hurricane Ida [and] not supported by any photographs or even by [Kennedy]."[25] GeoVera argues that Irwin "completely disregarded" Galmon International's prior estimate of $55,692.21, included alleged damage to multiple rooms that were not previously reported or observed to have damage, and included excessive estimates for unspecified and unsupported expenses.[26] GeoVera also argues that Corbitt's award was "highly inflated" and "wrought with errors" as it, too, included repairs to areas for which no

---

[20] *Id.* at 1.
[21] *Id.* at 5-8.
[22] R. Doc. 13-2 at 17.
[23] R. Doc. 13-1 at 3-5 (quoting R. Doc. 13-2 at 17-18).
[24] *Id.* at 5-8 (citing La. R.S. 22:1703(A); *Chardonnay Vill. Condo. Ass'n, Inc. v. James River Ins. Co.*, 2008 WL 3285908 (E.D. La. Aug. 6, 2008); *Harris v. Am. Mod. Home Ins. Co.*, 571 F. Supp. 2d 1066 (E.D. Mo. 2008)) (quotation at 7).
[25] *Id.* at 8.
[26] *Id.* at 8-9 (quotation at 8).

3

damage was reported or observed prior to Irwin's appraisal and excessive estimates of general and unincurred expenses, used a nonstandard overhead and profit calculation, and also "appear[s]" to not have considered the Galmon International estimate.[27] GeoVera also contends that, despite the absence of specific policy language deeming appraisals nonbinding, the terms of both the Policy and the appraisal award, as well as the Louisiana Department of Insurance's prohibition against any "'appraisal provision that states the appraisal process is "binding" or "final,"'" all render Corbitt's appraisal award nonbinding.[28] Finally, GeoVera asks that the appraisal award be stricken from the record in its entirety because "the appraisal process, clear financial interest of [Kennedy's] appraiser, and blatant inaccuracies in the award give serious concern as to the honesty and integrity of [Kennedy's] appraiser."[29]

Kennedy argues in opposition that GeoVera fails to sufficiently put Irwin's honesty in question by "rel[ying] on conjecture and unsubstantiated allegations."[30] Kennedy also argues that the instant motion, filed in October 2024, is untimely because the award was issued in March 2023.[31] Kennedy next argues that GeoVera's objection to Irwin's contingency fee arrangement is misplaced because "[t]here are no specific allegations or evidence suggesting that Miles Corbitt, the umpire, had any financial interest or was influenced by this arrangement."[32] Kennedy finally contends that the appraisal award was the product of a procedurally proper appraisal process with no evidence of irregularities or conflicts of interest.[33]

In its reply, GeoVera maintains that its allegations of partiality are not speculative, reiterating that the Appraisal Contract itself "is clear evidence that a lack of integrity or honesty

---

[27] *Id.* at 9.
[28] *Id.* at 10-11.
[29] *Id.* at 12.
[30] R. Doc. 16 at 2.
[31] *Id.*
[32] *Id.* at 3.
[33] *Id.*

4

existed in the appraisal process because the contract provided that the appraiser's compensation would be determined by the amount of the award."[34] Lastly, GeoVera denies that its motion to strike is untimely because it filed the motion within one month of Kennedy's disclosure of the Appraisal Contract on September 25, 2024, "at which time [GeoVera first] became aware that a contingency fee existed."[35]

### III. LAW & ANALYSIS

#### A. Legal Standard

The parties agree that Louisiana law governs the interpretation of the Policy. Under Louisiana law, contracts are construed according to the general rules of contract interpretation set forth in the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). Contracts are interpreted to determine "the common intent of the parties." *Id.* (citing La. Civ. Code art. 2045). "Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Id.* (citing La. Civ. Code art. 2047). An insurance policy "should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Id.* A court cannot exercise "inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." *Id.* Thus, clear and unambiguous policy wording that expresses the parties' intent is enforced as written. *Id.* On the other hand, ambiguous provisions and "equivocal provisions seeking to narrow an insurer's obligation" are strictly construed against the insurer and in favor of coverage. *Id.* However, the strict construction principle applies only if the ambiguous

---

[34] R. Doc. 17 at 1.
[35] *Id.* at 2.

5

policy provision is susceptible of more than one reasonable interpretation. *Id.* "The determination of whether a contract is clear or ambiguous is a question of law." *Id.*

Appraisal provisions are enforceable under Louisiana law. *Island Concepts, LLC v. Certain Underwriters at Lloyd's, London*, 2014 WL 5524379, at *4 (E.D. La. Oct. 31, 2014) (collecting cases). Appraisal provisions are strictly construed, and an award issued under an appraisal provision "is binding only if the appraisers 'have performed the duties required of them by the policy, which is the law between the contracting parties.'" *St. Charles Par. Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.,* 681 F. Supp. 2d 748, 754 (E.D. La. 2010) (quoting *Branch v. Springfield Fire & Marine Ins. Co.*, 4 So. 2d 806, 809 (La. 1941)). The party challenging a binding appraisal award bears the burden of showing that it should not be confirmed. *Id.* A party "challeng[ing] the impartiality of appraisers and umpires during the course of appraisals … must produce evidence 'that the appraiser's honesty or integrity is suspect.'" *Id.* (quoting *Carriage Ct. Condo. Owners Ass'n, Inc. v. State Farm Fire & Cas. Co.*, 2009 WL 1565937, at *3 (E.D. La. May 28, 2009)). An appraisal contract that compensates an appraiser by means of a contingency fee or "closely resembles a contingency fee contract … impermissibly renders [the appraiser] a partial, interested party." *Chardonnay Village*, 2008 WL 3285908, at *1.

**B. Analysis**

Section 17 of the Appraisal Contract, titled "Flat Fee Rate," provides that Irwin is to be paid a "reasonable flat fee for services as stated in the flat fee schedule listed below of the appraiser's valuation of loss, which is not contingent to the panel award."[36] The "flat fee schedule" assigns a different "flat fee" to each of several valuation ranges, with the fees and valuation ranges increasing concomitantly from a $3,900 fee for valuations up to $50,000 to a $174,000 fee for

---

[36] R. Doc. 13-7 at 5.

valuations between $1,750,001 and $2,000,000 (plus "an additional $50,000 per $500,000 increment" above $2,000,000).[37] Because Irwin's fee increases as its valuation of loss increases, § 17 functionally creates a contingency fee arrangement. *Cf. Chardonnay Village*, 2008 WL 3285908, at *1 ("While the contract does quote an hourly rate, it also includes an alternative percentage of recovery formula which increases as the money recovered from [the insurer] increases. In this way, [the] contract more closely resembles a contingency fee contract …."). This gives Irwin a direct financial interest in the outcome of its own appraisal, *i.e.,* its valuation of loss, which could have either established the final award upon agreement of the appraisers[38] or, as here, been one of two valuations upon which the umpire's award was based.[39]

The Policy requires that, should the appraisal provision be invoked, each party "choose a competent and impartial appraiser," further specifying that "[a]n appraiser will not be considered impartial if their compensation is determined by the amount of the appraisal award."[40] The apparent purpose of this specific provision is to ensure the appraisers are impartial in that they have no incentive to artificially inflate their valuations of loss to obtain a higher fee. *See, e.g., Shores at Coco Plum Condo. Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.,* 2019 WL 2223172, at *2 (S.D. Fla. Apr. 29, 2019) ("By virtue of the contingency compensation plan, [the appraiser] has a vested interest in appraising the [p]roperty at the highest possible recovery because his

---

[37] *Id.* Irwin's valuation of loss totaling $164,658.06 would garner a $15,900 fee under the fee schedule. *Id.* GeoVera asserts in its motion that "[i]n this case, with the appraisal award totaling 'between $140,001 and $500,000,' Plaintiffs' appraiser's invoice totaled $13,900," implying that Irwin's fee was contingent on the appraisal award – and not, as the Appraisal Contract reads, the valuation of loss – in direct violation of the Policy. R. Doc. 13-1 at 7. Kennedy does not deny this assertion in its opposition. Regardless, whether Irwin's fee was the lower $13,900 or the higher $15,900, it violates the appraisal provision's prohibition against naming an appraiser whose compensation amounts to a contingency fee.

[38] R. Doc. 13-2 at 41 ("If the appraisers submit a written report of an agreement to [GeoVera], the amount agreed upon will be the amount of loss.").

[39] *Id.* ("If the appraisers cannot agree, they will each submit their differences to the umpire, specifically describing the differences and the amount attributable to each difference. The umpire will set the amount of loss.").

[40] *Id.* at 40.

7

compensation will be a percentage of the appraisal."). Another judge in this district has similarly found that an appraiser whose contract "closely resembles a contingency fee contract" is "a partial, interested party" subject to disqualification, even where the appraisal provision at issue did not specifically exclude appraisers whose "compensation is determined by the amount of the appraisal award." *Chardonnay Village,* 2008 WL 3285908, at *1. Irwin's fee was either "determined by the amount of the appraisal award" itself or determined by its own valuation of loss, upon which the umpire's award was based. In either instance, the appraiser's financial interest in the appraisal process arises from a contract that resembles a contingency fee, and the appraiser's impartiality – and thus the integrity of the award – are called into question under the express language of the Policy. Because courts must "ascertain the common intent of the parties to the contract," *Cadwallader*, 848 So. 2d at 580, and Irwin's "flat fee" arrangement is consistent with "compensation … determined by the amount of the appraisal award," Irwin does not qualify as an "impartial appraiser" under the terms of the Policy.[41]

Kennedy does not deny that Irwin had a financial interest in the appraisal process (in fact, Kennedy repeatedly refers to the Appraisal Contract as a "contingency fee arrangement"), nor does Kennedy attempt to refute GeoVera's argument that the Appraisal Contract violates the Policy and Louisiana law.[42] Instead, Kennedy argues that GeoVera's contingency-fee argument is "misplaced" because there is no evidence that the umpire, Miles Corbitt, "had any financial interest or was influenced by this arrangement" and "an award reached without procedural irregularities and with proper representation of both parties is valid."[43] However, Corbitt's award was not reached without procedural irregularities, and Irwin did not properly represent Kennedy – as

---

[41] R. Doc. 13-2 at 40.
[42] R. Doc. 16 at 3.
[43] *Id.*

8

shown above, Irwin was not an "impartial" appraiser, as required by the Policy. The fact that a neutral umpire ultimately issued the award does not cure the appraisal process of this procedural defect, not only because Corbitt's award was based in part on Irwin's valuation of loss, but because the agreement of two panel members was necessary to set the amount of loss,[44] and Van Shoubrouek (Irwin) was the only other panel member to agree to Corbitt's award.[45] *See, e.g., Cent. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 466 N.W.2d 257, 261 (Iowa 1991) ("This [appraisal] agreement requires one of the appraisers and the umpire to jointly arrive at a decision. This places the appraiser in the position of decision-maker; thus, the function of the appraiser becomes quasi-judicial. … An inherent qualification for a quasi-judicial decision-maker is disinterest in the result." (internal citation omitted)). The Court also rejects Kennedy's argument that GeoVera's motion to strike the appraisal award is untimely because the instant motion was filed on October 25, 2024, just one month after Kennedy disclosed the Appraisal Contract.[46]

Because the award resulted from an appraisal process tainted by Irwin's disqualification under the Policy's requirement of impartial appraisers, it must be set aside.[47] Necessarily, the parties must restart the appraisal process in compliance with the terms of the Policy, including by appointing "competent and impartial" appraisers on both sides, to set the amount of loss.

---

[44] R. Doc. 13-2 at 41 ("A decision agreed to by any two [appraisers] will set the amount of loss.").

[45] *See* R. Docs. 13-1 at 2 ("The umpire signed the appraisal award on March 24, 2023. The opposing appraiser with Irwin + Associates signed the award on March 26, 2023 for $146,436.65.6. Interestingly, GeoVera's appraiser was not even provided the proposed award until March 27, 2023 and was not given any opportunity to produce any remarks on the award prior to it being executed."); 13-5 at 1 (indicating the award was signed by Van Shoubrouek and Corbitt).

[46] R. Docs. 13-1 at 3; 17 at 2.

[47] Because the Court sets aside the appraisal award on this basis, it need not address GeoVera's arguments that the award is inaccurate, unreliable, and nonbinding. R. Doc. 13-1 at 8-12.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that GeoVera's motion to strike the appraisal award (R. Doc. 13) is GRANTED.

IT IS FURTHER ORDERED that the appraisal award is set aside.  The parties must restart the appraisal process in compliance with the terms of the Policy to set the amount of loss.

New Orleans, Louisiana, this 22nd day of November, 2024.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE